**SO ORDERED.**

**SIGNED this 23rd day of July, 2020.**



_____
Dale L. Somers
United States Chief Bankruptcy Judge

Not designated for print publication

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In re:**<br><br>**John David Boucek,**<br><br>     **Debtor.** | **Case No. 18-40249**<br>**Chapter 12** |

## Memorandum Opinion and Order
## Granting Bank of Tescott's Motion to Strike

The matter before the Court is the motion of Bank of Tescott (BOT)[1] to strike a provision of Debtor's proposed Chapter 12 plan.[2] Debtor appears by David R. Klasssen. BOT appears by Aaron O. Martin and Jacob Peterson of

---

[1] Doc. 218. The motion addresses two provisions, but the parties have reached agreement on BOT's objection to one of them.

[2] Doc. 175.

Clark, Mize & Linville, Chtd. The Court has jurisdiction.[3] After the matter was submitted to the Court for decision on the briefs, the Court requested and heard oral arguments. It is now ready to rule and, for the reason stated below, grants the motion.

BOT is Debtor's only secured creditor and, for purposes of Debtor's proposed Chapter 12 plan, is in a separate class. Its claim is for $568,868.25. Generally, the plan provides that BOT's secured claim will be paid in full. The first source of payment is recovery (after the payment of attorney fees) from state court litigation by Debtor against Debtor's family members, including his brother Richard and his sister Diana, whenever that money may become available. The second source of payment is as follows:

> Any amounts to which the Debtor is entitled in the [state court] litigation . . .which was wrongly paid to BOT by one or more of the defendants in such litigation and which BOT applied to the obligations of any of such defendants then owed to BOT rather than being applied to the Claims included in this Class

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure (March 2018). Matters concerning confirmation of plans are core proceedings which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(L). There is no objection to venue or jurisdiction over the parties.

> owed by Debtor to BOT shall be credited against the
> Claims included in this Class and reduce the amount
> of the Claims of BOT included in this Class which the
> Debtor must pay to BOT under this Class.[4]

This provision will be referred to as the Credit Provision. In order to simplify preparation for and conduct of trial on BOT's objections to confirmation, the bank, seeks an immediate ruling on whether the Credit Provision should be stricken as a matter of law.

## I. Positions of the Parties

BOT's position is that the Credit Provision is a setoff seeking to reduce its claim and such reduction is contrary to two prior rulings. The first is the judgment of the Ottawa County District Court in BOT's foreclosure action against the Debtor. The second is this Court's order, entered when granting BOT's motion for relief from stay to litigate its foreclosure action in state court, that the state court finding as to the amount owed by Debtor to BOT would be a binding resolution of the Debtor's objection to BOT's claim. In its reply brief, BOT further argues, to the extent the Credit Provision is based upon a future ruling in the pending state court litigation that Debtor is entitled to the remedy of constructive trust, Debtor would not be entitled to divest BOT of any trust property it has applied to Richard's loans.

---

[4] Doc. 175, p. 21.

Debtor responds that the Credit Provision does not relate to alleged wrongs of BOT which were raised and decided adversely to the Debtor in the foreclosure action, but does relate to his potential recovery from Richard and/or Diana in the state court litigation. These differing perspectives can be resolved only after understanding the basics of the state court litigation.

## II. Factual Background

### A. The Estate Litigation

Debtor initiated protracted litigation against family members in 2006 by filing a petition in Ottawa County District court against his mother, Bernice E. Boucek, individually and as a trustee of two trusts. The primary allegation was that Bernice had wrongfully conveyed property for the benefit of family members other than Debtor. When Bernice died in 2008, Richard Boucek, Debtor's brother, and Diana Peck, Debtor's sister, were substituted as defendants in their capacities of executors of Bernice's estate and trustees of the two trusts. The claims asserted were: breach of a joint, mutual, and contractual will; breach of trust; and constructive fraud. The remedies sought by Debtor included a constructive trust on real and personal property allegedly wrongfully transferred in violation of the terms of the trusts.

In 2008, upon the death of Bernice, Richard also filed a petition for appointment of special administrator in the probate court of Ottawa County.

Richard and Diana were named as parties as co-executors of Bernice's estate and Bernice's four children, Debtor, Richard, Diana, and Jeanette, were joined as heirs of Bernice. Debtor asserted as demands the same claims that were pending in the 2006 case; thereafter the district court treated the two cases as if they were consolidated, and they will be collectively referred to as the Estate Litigation.

In June of 2019, after an appeal by Debtor to the Kansas Supreme Court, the state court granted Debtor's motion for partial summary judgment in part, finding as follows: Bernice's transfer of certain land to the 2004 trust breached a 1989 Will and constituted constructive fraud; and that Bernice's transfer as sole trustee of the 1996 Trust of other land to herself in 2004 constituted a breach of the 1996 Trust and constituted constructive fraud. The court, however, declined to rule on summary judgment that Debtor is entitled to the remedy of constructive trust of the proceeds to the transferred property that were allegedly wrongfully used for the benefit of Richard, and that issue remains to be resolved.

**B. The Foreclosure Case and Debtor's Chapter 12 Case**

BOT was Debtor's primary operational lender for his farming operations for many years, including at the time of Bernice's death and thereafter. In May 2017, Debtor was in default under the terms of his note,

5

mortgages, and security agreements with BOT. The bank filed a foreclosure suit in Ottawa District Court on May 24, 2017 (the Foreclosure Case). BOT alleged Debtor owed $465,893.46, plus interest, late fees, and other charges for a total of $514,245.10.[5] In addition to Debtor, the defendants included Richard and Diana individually and in the capacities in which they are defendants in the Estate Litigation. Debtor did not file cross claims against any of them. Debtor filed his answer and counterclaims against BOT on July 27, 2017.[6] In his counterclaims, Debtor alleged that since Bernice's death BOT had wrongfully applied the portion of income from the real estate subject to the 1989 Will and the 1996 Trust to which Debtor was entitled to Richard's loans with BOT and the bank therefore has liability to him for damages in excess of $404,663.00 as of July 11, 2017.[7] The claims asserted were conversion; intentional interference with Debtor's contract rights under 1989 Will and the 1996 Trust; breach of loyalty; and breach of the duty of good faith and fair dealings.[8] In his first amended answer, Debtor added

---

[5] Case no. 18-07014, doc. 1-2, p. 12.

[6] Case no. 18-07014, doc. 1-3, pp. 8-20.

[7] *Id.* at. 19.

[8] *Id.* at 15-19.

6

affirmative defenses of breach of contract, offset, unclean hands, waiver, and estoppel.[9]

Debtor filed for relief under Chapter 12 on March 20, 2018. BOT filed a motion for relief from stay to continue the Foreclosure Case in state court.[10] BOT filed a proof of claim for $568,868.24, secured by real and personal property alleged to have value of $441,000.[11] Debtor objected to the proof of claim, contending that the bank did not have a lien in one piece of collateral, that the bank undervalued Debtor's general intangibles, and that the claim should be reduced by $404,663 as of July 2017, the damages alleged against BOT in the counterclaims in the Foreclosure Case.[12] Debtor also opposed relief from stay.[13]

The Debtor's objection to BOT's claim and BOT"s motion for relief from stay were resolved by an agreed order entered on February 25, 2019.[14] Relief from stay was granted to proceed with all matters necessary to obtain a final

---

[9] Id. at p. 27.

[10] Doc. 46.

[11] POC 9.

[12] Doc. 73.

[13] Doc. 78.

[14] Doc. 122.

decision in the Foreclosure Case, but not enforcement of any judgment. The agreement provided "that any monetary judgment entered against the Debtor in the Foreclosure Lawsuit shall constitute the amount of Tescott's proof of claim, or amendments thereto, in this bankruptcy"[15] A subsequent agreement provided that Debtor would dismiss all counterclaims against BOT in the Foreclosure Case, but such dismissal "shall not affect any claims, issues, and defense"[16] in the Estate Litigation. Further, although operating "to prohibit any recovery of monetary damages from BOT," the agreement provided that it did not bar Debtor's "ability to maintain defenses limiting or defeating the amount of BOT's claims against [Debtor] in"[17] the Foreclosure Case "if any are proven, accepted by the trier of fact and the court, and supported by applicable law."[18]

BOT moved for summary judgment in the Foreclosure Case. After hearing oral arguments, the Court on June 6, 2019, entered its Memorandum Decision in favor of BOT.[19] All of the Debtor's affirmative defenses, which

---

[15] *Id*. at. 3.

[16] Doc. 218-1, pp. 7-8.

[17] *Id*. at 9.

[18] *Id*.

[19] Doc. 218–2.

were premised on BOT's alleged wrongful application of proceeds from the properties which are the subject to the Estate Litigation to Richard's debts to BOT, were rejected. Among other deficiencies, the court found that Debtor had failed to show in accord with summary judgment standards that Debtor was entitled to the funds by virtue of his claims in the Estate Litigation.[20] As to the affirmative defense of offset, the court found that "there is no debt [Debtor] may set off against the Bank's judgment."[21] The court granted a judgment in favor of BOT on Debtor's loans for $514,245.10, with interest accruing after May 24, 2017, plus late charges, expenses, and other charges to be determined at a later date.[22]

**Analysis.**

### A. The Credit Provision is Objectionable

As stated above, BOT moves to strike the Credit Provision arguing that it allows setoff contrary: (1) the judgment of the Ottawa County District Court in BOT's Foreclosure Case rejecting Debtor's affirmative defense of offset; and (2) this Court's order adopting the parties' agreement that the state court finding in the Foreclosure Case as to the amount owed by Debtor

---

[20] *Id.* at 17.

[21] *Id.* at 20.

[22] *Id.*

9

to BOT would be a binding resolution of the Debtor's objection to BOT's claim. Debtor responds that the Credit Provision has nothing to do with the Foreclosure Case but it would implement Debtor's remedy of constructive trust which he anticipates being granted in the Estate Litigation.

The Court understands the Credit Provision as proposing a means for payment, not a reduction, of BOT's claim. The plain language of the proposed Chapter 12 plan provides for payment through (1) actual cash transfer to BOT of proceeds of the Estate Litigation and (2) credit of payments applied by the bank to Richard's debt which through a constructive trust are held to be trust property to which Debtor was entitled.

When viewed in this manner, it is clear, as argued by Debtor, that the Credit Provision is not contrary to the rejection of the offset defense in the Foreclosure Case or to the order that the amount of BOT's claim would be the amount determined to be owed by the state court in the Foreclosure Case. The rejected offset affirmative defense was premised upon alleged wrongs of BOT in applying allegedly tainted funds to the payment of Richard's debt. The remedy of constructive trust sought in the Estate Litigation is for the alleged wrongs of Bernice and other family members, not alleged wrongs of BOT. BOT is not a party to the Estate Litigation; any constructive trust imposed would not be because of wrongs of BOT. Although it is true that both

the assertion of offset in the Foreclosure Case and the prayer for constructive trust in the Estate Litigation arise from the same events, the legal theories are distinct. The state court's rejection of the offset defense did not constitute a ruling on the constructive trust remedy in the Estate Litigation.

Since the Credit Provision specifies a source of payment of BOT's claim, it does not reduce the claim from the amount found owing by the state court. It is therefor not contrary to this Court's ruling that the amount of BOT's claim as determined in the Foreclosure Case determines Debtor's objection to BOT's proof of claim.

But this understanding of the Credit Provision and rejection of BOT's initial arguments does not mean that the Credit Provision should not be stricken. Rather, as argued by BOT, assuming that Debtor does prevail on his quest for a constructive trust on funds applied by BOT on Richard's loans, it would not follow that BOT must pay those funds to Debtor or be entitled to credit them against Debtor's obligation. Under Kansas law, when a constructive trust is affixed to property, the trust pursuit rule allows the true owner to pursue the property and follow it into a subsequent possessor's hands only when there is a "showing that the third party acted in bad faith,

11

had notice of the trust, or did not give consideration for the payment."[23] In other words, when a constructive trust exists and the property is transferred, the subsequent possessor, like BOT in this case, is not automatically liable to the trust beneficiary. Rather, the possessor has defenses which may be asserted.

Debtor's protestations that BOT had notice of John's claim of trust and acted in bad faith are simply evidence in support of BOT's liability. There has not been a finding that BOT would be liable if a constructive trust is imposed. BOT is not a party to the Estate Litigation, so if Debtor's request for a constructive trust is granted, there would be no concurrent finding of BOT's liability to John. The fatal flaw in the Credit Provision is that it presupposes liability of BOT - that if the constructive trust remedy is ordered in favor of Debtor in the Estate Litigation and a portion of the trust property or its proceeds were transferred to BOT, BOT would be liable to the Debtor. This does not reflect Kansas law. The Credit Provision is therefor improper.

However, the Court declines to rule on BOT's argument that, as a matter of law, findings regarding good faith and notice have already been made in its favor in the Foreclosure Case when the offset defense was

---

[23] *Sprague v. Farm Credit Services of Central Kansas, PCA,* 28 Kan. App. 2d 872, 872, 22 P.3d 608, 609 (2001).

rejected. This position presents the question of the extent of the collateral estoppel effect of the rulings in the Foreclosure Case in the Estate Litigation and/or this bankruptcy case. But BOT has not provided any authorities or arguments regarding why the findings in the Foreclosure Case should be binding on another forum, and Debtor also has not briefed the issue. The issue is not ripe for resolution.

For the foregoing reasons, the Court finds that the Credit Provision is improper.

### B. Debtor's alternative to the Credit Provision is also Objectionable

When responding to BOT's motion, Debtor offers to amend the proposed Chapter 12 plan's Credit Provision to provide "that if John [Debtor] recovers any funds wrongly paid Richard or Diana, or either of them, on Richard's loans with BOT, such funds must be repaid to John and John would then immediately pay such funds to BOT for application to John's debts owing to BOT."[24] The Court understands this offer to be simply a rewording of the Credit Provision. It, like the Credit Provision, would be acceptable only if it also included as a condition that BOT had been found liable to Debtor, which

---

[24] Doc. 242, p. 8.

13

it does not include.[25] Debtor asks this Court to order that BOT, if found to have been the recipient of trust assets, is liable to Debtor, without considering BOT's possible defenses. The Court declines to do so.

## IV. Conclusion

For the reasons stated above, the Credit Provision is stricken from the portion of Debtor's proposed Chapter 12 plan addressing payment of BOT's claim.

**It is so ordered.**

###

---

[25] The Court observes that if that condition were included, then the obligation of BOT to Debtor would simply be part of the recovery in the Estate Litigation and included in the first source of payment for BOT's claim stated in the Proposed Chapter 12 plan.

14